UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KHADIJA SHABAZZ,

    Defendant-Appellant.
_____/

Case No. 15-51502

Honorable Nancy G. Edmunds

## OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE'S OPINION AND ORDER AND DENYING DEFENDANT/APPELLANT'S APPEAL [6]

This matter is before the Court on Defendant Khadija Shabazz's appeal (docket 6) of her conviction during a bench trial before Magistrate Judge David R. Grand, in which Defendant was found guilty of the misdemeanor offense of exhibiting disorderly or other conduct which: (a) created a loud or unusual noise or nuisance; (b) impeded or disrupted the performance of official duties by government employees; and (c) prevented the general public from obtaining the administrative services provided on the property in a timely manner in violation of 41 C.F.R. § 102-74.390. (Sept. 30, 2015 Op. and Order, dkt. 6-1.) The Magistrate Judge ordered the Defendant to pay a fine of $200. For the reasons stated below, Defendant's appeal is DENIED and the Court AFFIRMS the conviction.

**I.   STANDARD OF REVIEW**

"In all cases of conviction by a United States magistrate an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. In reviewing a magistrate judge's

order or judgment, "[t]he defendant is not entitled to a trial *de novo* by a district judge," but "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). "[O]n an appeal from a judgment entered after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 547 (6th Cir. 2010) (citing *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005)). The district court may rely on the evidentiary record developed before the magistrate judge and does not need to conduct a *de novo* hearing. *See U.S. v. Raddatz*, 447 U.S. 667, 673-77 (1980) (case arising in context of a dispositive decision for which the magistrate does not have the authority to make a final and binding disposition; there is no requirement that the district judge conduct a new hearing). The Magistrate Judge's findings of fact are thorough and contain specific citations to the evidence of record, including the trial transcripts, and the Court cites to them herein.

## II. BACKGROUND AND FACTS

This case arises from an incident which occurred on October 7, 2014, when Defendant Khadija Shabazz and her sister entered a Social Security Administration ("SSA") Office. The SSA office contains both an initial screening area where bags are searched and a secondary screening area with a metal detector; there were three security guards on duty at the time the sisters arrived. (Sept. 30, 2015 Op. and Order ¶ 3, dkt. 6-1.) While the sisters were in the initial screening area, they engaged in conversation with each other regarding the security procedures. At that point, one of the security guards made a comment to the sisters related to their conversation, noting that the SSA office had long had security procedures in place. (Op. and Order ¶ 8.) Defendant criticized the security

guard, apparently for participating in their conversation, stating that he was "'just a security guard' who couldn't make it through the Police Academy.'" (Op. and Order ¶ 9.) Engagement between Defendant and the security officer continued as Defendant moved from the initial screening area to the secondary screening area. (Op. and Order ¶¶ 9, 10.) The Magistrate Judge characterized Defendant's comments at this time as "negative" yet also found that at this point in time, while Defendant's conduct "was perhaps disrespectful and discourteous," it "had not risen to the level of a 'disturbance.'" (Op. and Order ¶¶ 10, 11.) The Magistrate Judge found that as Defendant completed the secondary screening procedures, her sister was still able to be processed at the initial screening area and no other business of the SSA office had yet been interrupted. (Op. and Order ¶ 11.)

It was as Defendant left the second screening area and headed toward the waiting area that the "disturbance" began. (Op. and Order ¶ 12.) Defendant further verbally engaged with the security guard at the secondary screening post, which engagement was "loud" or "very loud", and "belligerent," as the Magistrate Judge found based on testimony and video which showed body language consistent with the testimony. (Op. and Order ¶ 12.) The exchange drew the security guard from his post and toward Defendant. The security guard asked Defendant to leave and Defendant challenged his authority to do so. At one point Defendant called 9-1-1, while two security guards advised her to make such a call from the vestibule area. (Op. and Order ¶ 15.) During these exchanges, two of the security guards had left their posts and "a number of customers had built up in the vestibule area and were unable to proceed through security." (Op. and Order ¶ 17.) One of the security guard's physical attempt to detain Defendant resulted in a "short struggle" after which the guard was able to handcuff Defendant. (Op. and Order ¶ 20.) During this

3

disturbance, "business essentially ceased at the SSA office, and customers were escorted out," resulting in an interruption of service of approximately 15 to 30 minutes. (Op. and Order ¶ 21.) The SSA Office notified Federal Protective Services ("FPA") of the incident and the FIA inspector arrived shortly thereafter. (Op. and Order ¶ 22.) The inspector interviewed witnesses including Defendant, reviewed the surveillance video of the incident and issued Defendant a citation for violating 41 C.F.R. § 102-74.390. (Op. and Order ¶ 22.)

Following a two-day bench trial on July 13 and 14, 2015, the Magistrate Judge found Defendant guilty of violating 41 C.F.R. § 102-74.390. The Magistrate Judge concluded that the government had "demonstrated beyond a reasonable doubt that [Defendant] Shabazz exhibited disorderly or other conduct which: a) created a loud or unusual noise or nuisance; (b) impeded or disrupted the performance of official duties by government employees; and (c) prevented the general public from obtaining the administrative services provided on the property in a timely manner." The magistrate also found that the government has demonstrated beyond a reasonable doubt that the offense occurred on public property, that the Defendant failed to comply with an official sign conspicuously posted at the SSA office, and that Defendant acted in an unlawful, willful, and knowing manner. (Op. and Order ¶¶ 30-33.)

Defendant now appeals the Magistrate Judge's decision, arguing that her conviction was obtained in violation of her First Amendment rights. (Def.'s Br. on Direct Appeal, dkt. 6.)

## III. ANALYSIS

The Magistrate Judge convicted Defendant of violating 41 C.F.R. § 102-74.390 which provides:

4

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that—
>
> (a) Creates loud or unusual noise or a nuisance;
>
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
>
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
>
> (d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

41 C.F.R. § 102-74.390. Defendant argues that her conviction must be reversed because it violates her First Amendment rights.

The transcript shows that Defendant's counsel argued at the first trial that her First Amendment rights were violated. The Magistrate Judge concluded that Defendant violated 41 C.F.R. § 102-74.390, and thus did not believe that Defendant was subjected to a violation of her First Amendment Rights, a finding necessary to the Magistrate Judge's conviction. The Court reviews the Magistrate Judge's decision for clear error and reviews the conclusions of law de novo.

To the extent that Defendant argues that this conviction violates her First Amendment rights, the Court disagrees. In a similar case, the First Circuit stated, "It is well established that the need to safeguard the normal functioning of public facilities is a 'substantial government interest' sufficient to warrant reasonable restrictions on even 'pure speech,' let alone symbolic conduct." *U.S. v. Bader*, 698 F.2d 553, 555 (1st Cir. 1983) (citing *Adderley v. State of Florida*, 385 U.S. 39 (1966)). In *U.S. v. Bader*, the defendants engaged in a sit-in inside a federal building and in the doorway leading to the draft registration room. *Id.* at 555. The defendants were convicted under two different federal regulations for failing to

5

obey "the direction of Federal protective officers" and creating disturbances in federal buildings. *Id.* Specifically, 41 C.F.R. § 101-20.305 prohibited

> Any unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances . . .; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner . . . .

*Id.* at 554 (citing 41 C.F.R. § 101-20.305). Defendants were tried by a United States magistrate judge, and convicted. The district court upheld their convictions. Like here, they argued that the First Amendment barred their conviction. *Id.* The *Bader* court recognized that "[e]ven were 'pure speech' at issue, the government can restrict '[t]he right to use a public place for expressive activity' through 'reasonable 'time, place and manner' regulations [which] may be necessary to further significant government interests . . . .'" *Id.* at 555 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972)). The court cited a list of cases in which other courts have held that the government could punish those who had engaged in an orderly demonstration on jailhouse grounds, a peaceful picket near a courthouse, a speech in a library reading room, and an interference with traffic on a public way, and concluded that the government "surely can punish those who physically obstruct a doorway, and make it more difficult for the public to conduct its business-- especially since, unlike a street or sidewalk, a post office and courthouse building is not customarily open for use for demonstrations or similar speech-related purposes." *Id.* at 555-56 (citations omitted).

The Seventh Circuit looked to *Bader* nearly 15 years later when it too had an appeal of a conviction under 41 C.F.R. § 101-20.305, following a magistrate judge's proceeding

6

and an appeal to the district court. See *U.S. v. Rixleben*, No. 96-1804, 1997 WL 312268, 116 F.3d 1483 (7th Cir. 1997). Like Plaintiff and Baden, Rixleben argued that "his conviction should be reversed because his conduct is protected speech under the First Amendment." *Id.* at *2. The *Rixleben* court concluded that the defendant's actions were "appropriately subject to 41 C.F.R. § 101-20.305," he was "not free to express his frustration with a postal worker by yelling at her and other postal employees and slapping a security guard," and his conduct was not protected speech under the First Amendment.[1]

Like the courthouse building and post office mentioned in *Bader*, the Social Security office "is not customarily open for use for demonstrations or similar speech-related purposes." *Bader*, 698 F.2d at 556. The Magistrate Judge's findings about Defendant's actions show that they were "'basically incompatible with the normal activity of [that] particular place at [that] particular time.'" *Bader*, 698 F.2d at 556 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972)). The Court finds that Defendant's conviction does not violate her First Amendment rights.

Defendant further argues that "an arrest undertaken at least in part as retaliation for a constitutionally protected insult to [an] officer's dignity would be impermissible unless it could be shown that the officer would have made the arrest even in the absence of any retaliatory motive." *Greene v. Barber*, 310 F.3d 889, 897-98 (6th Cir. 2002). The inquiry is "fact-intensive". *Id.* at 898. To the extent Defendant argues that the officers had a retaliatory motive for arresting her, the Magistrate Judge found to the contrary and cited

---

[1] It is worth noting that the prior 41 C.F.R. chapter 101 regulation at issue in *Bader* now cross references to 41 C.F.R. chapter 102; the regulation in *Bader* and *Rixleben* contains similar language to that of 41 C.F.R. § 102-74.390.

7

sufficient evidence in support of his related findings. The Magistrate Judge explicitly found that the security guards acted professionally, based on testimony of the guards and other witnesses, as well as the video evidence, which did not include audio, but from which the Magistrate Judge was able to consider body language, gestures and action regarding the incident, and finally, the Magistrate Judge's finding that Defendant's sister's testimony was not as credible on this issue as both the video evidence and other testimony. (Op. and Order ¶ 28.) The Magistrate Judge also found that the actual disturbance did not commence until Defendant left the secondary screening area and became "very loud" and "belligerent." (Op. and Order ¶¶ 11, 12.) Defendant's initial comments at the first screening area, calling the first guard a "security guard" who could not make it through the police academy, had not been enough to motivate an arrest. (Op. and Order ¶ 9.) The Magistrate Judge noted that the security guard at that point had "acted professionally" and shown "restraint" in not responding to Defendant's accusations, when he had "in fact been a police officer for more than 25 years." (Op. and Order ¶ 9.)

Finally, Defendant argues that *United States v. Lucinda Darrah*, No. 15-1116, 630 Fed. Appx. 390 (6th Cir. Oct. 30, 2015), provides that if the delay to the public from obtaining services provided on the property was due to a voluntary decision of the officer, here, for example, the security guard stepping away from the screening post, then the individual should not be considered the cause for the delay. (Def.'s Br. 17.) The Court agrees with the distinctions argued by the government with regard to the *Darrah* case. Darrah was distributing campaign literature outside a post office after business hours, she was the sole person near the post office entrance at that time of night, and postal officers could have easily ignored her by walking around here, therefore, she was not impeding

8

their entry into the building. *Id.* at 392. The only issue on appeal was "whether the defendant blocked the employee entrance to the building so that she temporarily prevented [an officer's] entry" and the evidence did not show that she impeded it in "any meaningful way." *Id.* at 392.

Here, the Magistrate Judge's factual findings show that the incident at issue occurred during business hours with patrons present. Despite Defendant's argument that the security officers could have easily ignored Defendant , but chose to leave their posts, the Magistrate Judge's findings are precise as to when the disturbance began, and show that for a portion of time, until Defendant became "very loud" and "belligerent", the security guards had indeed remained at their posts despite negative comments directed toward one of them. As Defendant left the second screening area she loudly engaged with the security guard at the screening post. (Op. and Order ¶ 12.) It was this point at which the Magistrate Judge found that the interactions became a disturbance, which included Defendant's refusal to leave and her refusal move to the vestibule to use her cell phone, both pursuant to posted signs pertaining to personal electronic devices and warning that persons "who become loud or disruptive will be asked to leave the office." (Op. and Order ¶¶ 5, 13, 15.) It was this disturbance that caused the build up of customers unable to proceed through the security screening areas. (Op. and Order ¶ 17.)

The Magistrate Judge's decision was not in error and is supported by the evidence of record. For the reasons set forth above, the Court AFFIRMS the Magistrate Judge's opinion and order.

## IV. CONCLUSION

The Magistrate Judge's Opinion and Order finding Defendant Shabazz guilty of violating 41 C.F.R. § 102-74.390 is AFFIRMED.

So ordered.

                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: October 20, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record and Plaintiff Angela Nails on October 20, 2016, by electronic and/or ordinary mail.

                                        s/Carol J. Bethel
                                        Case Manager